IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ELIZABETH HAMMOND,

        Plaintiff,

vs.                                                                 Civ. No. 15-605 JH/SCY

STAMPS.COM, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER OF REMAND

This matter is before the Court on Plaintiff's *Motion for Remand* [Doc. 7]. Plaintiff moves to remand the case to state district court, where it was filed originally, on the grounds that the $5,000,000 statutory minimum amount in controversy has not been satisfied. Defendant contends that Plaintiff's allegations and its own evidence demonstrate that the jurisdictional amount is satisfied. After reviewing the motion, response and reply, the Court concludes that it lacks subject matter jurisdiction because the Defendant has not met its burden to prove the jurisdictional amount by a preponderance of the evidence. Accordingly, the motion to remand will be granted.

## BACKGROUND

On June 8, 2015, Elizabeth Hammond filed her *Complaint for Conversion, Unjust Enrichment, Unfair Practices, and Class-Action* [Doc. 1-1] in the First Judicial District Court, County of Santa Fe, New Mexico. Hammond, a resident of New Mexico, is suing Stamps.com, a Delaware corporation with its principal executive offices in El Segundo, California. Doc. 1-1 at ¶¶ 1-2. According to the complaint, Stamps.com represents to investors that it has over 500,000

customers, and that it charges for mailing and shipping services on a recurring monthly subscription basis. *Id*. at ¶ 28-29.

Hammond alleges that she wished to purchase postage stamps with a particular design, but was unable to find them at local U.S. Post Offices. *Id*. at ¶¶ 5-6. As a result, she looked on the Internet for a website from which she could purchase the specific stamps she wanted. *Id*. at ¶ 7. Hammond found the Defendant's website, which advertised "Postage on Demand," and "Instantly buy and calculate exact postage." *Id*. at ¶ 9. Believing that Stamps.com would allow her to shop for postage stamps in her preferred design, Hammond created an account on the website and entered personal financial information. *Id*. at ¶¶ 11-18. At that point, Hammond discovered that she could not buy postage stamps in the design she wanted, and she left the Stamps.com website. *Id*. at ¶ 19.

Approximately four to six weeks later, Hammond noticed a $15.99 charge from Stamps.com on her debit card statement. *Id*. at ¶ 22. She was surprised because she believed that she had not purchased anything on that website. *Id*. The following month, Hammond noticed a second charge for $15.99. *Id*. at ¶ 23. She returned to the Stamps.com website to find out why she had been charged and to cancel her account. *Id*. at ¶ 24. Hammond discovered that she could not cancel her account online, and thereafter called Stamps.com directly to cancel. *Id*. at ¶ 25-26. She told the customer service representative that she felt deceived by statements on the Stamps.com website and that she had not understood that she had consented to a monthly charge. *Id*. at ¶ 27. Hammond requested that all of her money be paid back, but Defendant refused to return all of the money. *Id*.

Hammond's complaint asserts three state law causes of action against Stamps.com: (1) conversion, (2) unjust enrichment, and (3) violation of the New Mexico Unfair Practices Act,

N.M. Stat. Ann. § 57-12-1 *et seq*. She also requests that the Court certify her case as a class action under Rule 1-023, NMRA 2016. She alleges that the Plaintiff class includes hundreds or thousands of persons residing "throughout New Mexico and America," though information regarding to the precise size of the class within control of Stamps.com. Doc. 1-1 at ¶¶ 45-46. Hammond avers that "members of the plaintiff class have suffered the same injuries and possess the same interests as the Plaintiff." *Id*. at ¶ 54. In her prayer for relief, Hammond requests "compensatory, restitutionary, economic and actual damages" and punitive damages, or alternatively for $100 in damages under the UPA plus treble damages. She also requests attorney's fees and costs. Hammond's complaint does not distinguish between the damages she requests for herself as class representative and those she requests for each class member.

## DISCUSSION

I.   APPLICABLE LAW

   *A.   CAFA*

The Class Action Fairness Act of 2005 (CAFA) gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million. § 1332(d)(2), (5)(B); *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. ——, 133 S.Ct. 1345, 1348 (2013). The statute adds that "to determine whether the matter in controversy exceeds the sum or value of $5,000,000," the "claims of the individual class members shall be aggregated." § 1332(d)(6). And those "class members" include "persons (named or unnamed) who fall within the definition of the *proposed* or certified class." § 1332(d)(1)(D) (emphasis added).

In *Standard Fire Ins. Co. v. Knowles*, — U.S. —, 133 S.Ct. 1345, 1347 (2013), the Supreme Court was asked to decide whether a class-action plaintiff who stipulates, prior to

certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total thereby removes the case from CAFA's scope. The Court held that such a stipulation does not deprive the federal court of jurisdiction. *Id*. at 1348-49. In a bid to avoid federal jurisdiction, the named plaintiff in *Knowles* stipulated that the "aggregate damages" for the entire class would be less than $5 million. *Id*. at 1347. However, the Supreme Court rejected this attempt to limit the amount in controversy because "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified," and therefore the named plaintiff "lacked the authority to concede the amount-in-controversy issue for the absent class members." *Id*. at 1349.

### B. *Removal*

To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Dart Cherokee Basin Operating Co. v. Owens*, — U.S. —, 135 S. Ct. 547, 553 (2014). When removal is based on diversity of citizenship, the case must satisfy the amount-in-controversy requirement. Ordinarily, "the matter in controversy [must] excee[d] the sum or value of $75,000." § 1332(a). In class actions such as those under CAFA for which the requirement of diversity of citizenship is relaxed, § 1332(d)(2)(A)-(C), "the matter in controversy [must] excee[d] the sum or value of $5,000,000," § 1332(d)(2). If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is "deemed to be the amount in controversy." § 1446(c)(2). When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. § 1446(c)(2)(A).

If the plaintiff contests the defendant's allegation regarding the amount in controversy, § 1446(c)(2)(B) provides: "[R]emoval . . . is proper on the basis of an amount in controversy asserted" by the defendant "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional minimum. "This provision . . . clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart,* 135 S.Ct. at 554. In sum, under § 1446(a), a defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id*. At that point, "the defendant must affirmatively establish jurisdiction by proving jurisdictional facts that made it possible" that $5,000,000 was in play. *See McPhail v. Deere & Co*., 529 F.3d 947, 955 (10th Cir. 2008). This need not be proved to a certainty, however. Rather, "[u]nder the preponderance standard, '[t]he jurisdictional fact ... is not whether the damages are greater than the requisite amount, but whether a fact finder might legally conclude that they are." *Hartis v. Chicago Title Ins. Co*., 694 F.3d 935, 944 (8th Cir. 2012) (internal citations and quotations omitted).

Furthermore, in CAFA cases such as this, the presumption against removal that accompanies "ordinary" lawsuits does not apply. *Id*. (noting that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

**II.     ANALYSIS**

In this case, the parties do not dispute that two of CAFA's three jurisdictional requirements—minimal diversity among the parties and a putative class with more than 100 members—are satisfied. Rather, the dispute centers on whether there is at least $5,000,000 in controversy in this action. The Court must determine whether Stamps.com has demonstrated the jurisdictional amount by a preponderance of the evidence. *Dart,* 135 S.Ct. at 554.

First, the Court must determine the amount of money that is in controversy per putative class member. This analysis begins with the Complaint, Doc. 1-1. In the final paragraph, or prayer, of that document, Hammond asks for "compensatory, restitutionary, economic and actual damages," as well as punitive damages. *Id*. In the alternative, Hammond requests not only $100 damages per plaintiff under the UPA but also up to three times actual damages (i.e., treble damages) for Stamps.com allegedly willful unconscionable trade practice under the UPA. *Id*. *See also id*. at ¶ 40. Finally, she requests pre- and post-judgment interest, attorney's fees, and costs. *Id*. By the terms of Hammond's own Complaint, then, there is $300 at issue per class member stemming from Hammond's claim under the UPA alone, not including interest, attorney's fees and costs—each of which also contributes to the amount in controversy.

Hammond attempts to avoid this result by arguing in her motion to remand [Doc. 7] that class members should not be entitled after all to all of the damages she alleged in the Complaint on their behalf. Hammond states that members of the as yet uncertified class should be limited to $31.98 in damages, or two months' fees, stating that "[n]o reasonable plaintiff could fairly claim Stamps converted more than $31.98 from them" because after two months "a person should be on constructive if not actual notice of the charges." *Id*. at 2-3. However, as the Supreme Court noted in *Knowles*, a named plaintiff in a putative class action lacks authority to legally bind

members of the proposed class before the class is certified, and as a result may not concede the amount-in-controversy issue for the absent class members. *Knowles*, 133 S. Ct. at 1349. Thus, Hammond's UPA claim alone places a total of $300 in damages per class member at issue, exclusive of attorney's fees and costs.

Having determined the amount in controversy per class member, the Court turns now to the number of members of the putative class. Hammond does not allege the number of plaintiffs in the putative class, only that it is comprised of "hundreds or thousands" of former customers. Doc. 1-1 at ¶ 45. The determination of the reasonable probability[1] of the size of the putative class begins with Hammond's Complaint, which defines the class as "all residents of the United States of America who were required to telephone Defendant to cancel their account after discovering Defendant was taking money from them." Doc. 1-1 at ¶ 41. Hammond does not aver over what period of time the putative class members cancelled their Stamps.com accounts. However, the UPA has a limitations period of four years. *See Nance v. L.J. Dolloff Assocs.*, 138 N.M. 851, 856 (N.M. Ct. App. 2005) (stating that the four-year limitations period contained in N.M. Stat. Ann. § 37-1-4 applies to UPA claims). Thus, in its widest scope the class could include individuals who canceled their accounts over the four year period preceding the filing of Hammond's complaint, provided they "were required to telephone Defendant to cancel their account after discovering Defendant was taking money from them." Thus, as the Court construes this description of the class, it would not include Stamps.com customers who canceled their accounts for other reasons, such as not liking the Stamps.com service, deciding they no longer need the service or that it is too expensive, or transferring to one of Stamps.com's competitors.

---

[1] Some Circuit Courts of Appeals have noted that to find the jurisdictional amount by a "reasonable probability" is, in effect, equivalent to finding that it has been proven by a preponderance of the evidence. *See, e.g., Pazol v. Tough Mudder Inc.*, 819 F.3d 548, 552 (1st Cir. 2016); *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 50 (1st Cir. 2009).

With its Notice of Removal [Doc. 1], Stamps.com included the July 10, 2015, Declaration of James Treganza, the Corporate Controller since 2013. Doc. 1-2 at ¶ 1. He states that in the year prior to his affidavit, "over 20,000 customers have telephoned the company and cancelled their online Stamps.com 'continuity' accounts." *Id*. at ¶ 4(b). In a second affidavit attached to Stamps.com's response to the motion to remand, Treganza states that "more than 312,680 Stamps.com customers have called the company and cancelled their online Stamps.com accounts in the four years prior to the filing of Plaintiff's Complaint, and [] the company has collected more than $5,000,000 in monthly service fee revenue from accounts that have been cancelled in the last four years." Doc. 18-2 at ¶ 4. What is unknown is what percentage of those 312,680 customers who canceled their accounts did so "after discovering Defendant was taking money from them,"[2] versus how many canceled for any of a myriad of other possible reasons.

Only Stamps.com could possibly have access to the data that would be required to show how many of its former customers canceled their accounts because they had not realized they would be paying a monthly charge to access its services. It is undisputed that in order to cancel, Stamps.com customers must call the company's customer service department and speak to a customer service representative. Doc. 1-1 at ¶¶ 25-27; Doc. 18-1 at ¶ 4. Presumably, those representatives ask the customers why they wish to cancel so that the representative can attempt to persuade the customer to maintain his or her account. It defies common sense that a large company like Stamps.com, whose life blood appears to be monthly subscription fees, would not keep data regarding the reasons for customer cancellations in an effort to achieve greater retention. As the party with the burden of proof on amount in controversy, it was incumbent

---

[2] The subjective nature of the reason behind any particular customer's cancellation reveals the difficulty in identifying putative class members. Under Hammond's definition of the class, it is not clear how one could determine whether a particular former customer is a class member short of asking each customer why he or she canceled.

upon Stamps.com to come forward with this evidence which resides within its control alone. *See Amoche v. Guarantee Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009) (finding that the court may take into account "which party has better access to the relevant information."). It did not do so.

Instead, Stamps.com offers only conjecture as to the number of plaintiffs in the putative class—people who felt "duped" into subscribing to Stamps.com's monthly service plan. In this Court's view, the present record provides no way to determine if the putative class would have 1,000 members or 100,000 members. Based on the evidence (or lack thereof), both seem equally likely—though the former would not be enough to meet the jurisdictional amount. However, guesses and assumptions are insufficient to carry the removing defendant's burden of proof. *See, e.g., Pazol v. Tough Mudder Inc.*, 819 F.3d 548, 554-55 (1st Cir. 2016) (remanding CAFA class action where defendants' calculation of the damages in controversy relied in part on unsupported assumptions); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (refusing to uphold defendant's calculation of amount in controversy where the assumptions behind it were "not grounded in real evidence"); *Porter v. MetroPCS Communications, Inc.*, 592 Fed. Appx. 780, 783 (11th Cir. Nov. 14, 2014) (unpublished) ("Without any breakdown of MetroPCS's revenues, the district could would have to engage in hopeless speculation in assessing what amount may be subject to rescission; this it cannot do."); *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 916-17 (11th Cir. 2014); *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 52-53 (1st Cir. 2009) ("GTL was in a better position than plaintiffs to know who had purchased its policies and where they lived. Yet it provided the district court with virtually no information about the potential class size.").

In this case: (1) the needed evidence lies within the control of Stamps.com, (2) Stamps.com was aware that it bears the burden of proof on jurisdictional amount, (3)

Stamps.com failed to include the necessary evidence to support its assumptions as to class size in any of the affidavits and other evidence it has tendered in this case, and (4) Stamps.com has not asked for an opportunity to develop and tender the necessary data to support its assumptions. In light of these facts, the Court concludes that it would be futile to allow for discovery and further briefing on the jurisdictional amount.

In sum, the Court concludes that Stamps.com has not met its burden to show by a preponderance of the evidence that the amount in controversy is satisfied. Therefore, this Court lacks subject matter jurisdiction under CAFA, and the motion to remand will be granted.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion for Remand* [Doc. 7] is **GRANTED** and this case is hereby **REMANDED** to the First Judicial District Court, County of Santa Fe, New Mexico.

_____
**UNITED STATES DISTRICT JUDGE**